## WOMBLE v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 122.

District Court, W. D. Louisiana, Monroe Division.

Jan. 31, 1940.

Thompson & Thompson, of Monroe, La., for plaintiff.

Montgomery & Montgomery, of New Orleans, La., and A. T. Shotwell, of Monroe, La., for defendant.

DAWKINS, District Judge.

Plaintiff brought this suit in a State Court and it was removed here by the defendant on the ground of diverse citizenship. It is now to be considered on a motion to remand.

The petition alleges that the plaintiff is the holder of a policy of life insurance in

the defendant company of the face value of $5,000, issued to him under date of April 18, 1925, which carried a provision for the payment of disability benefits and for which a specific premium was paid; that the amount of income, in the event of total and permanent disability, as originally written in the policy, was $10 per month for each $1,000 of insurance, and all premiums were to be waived. The pertinent provisions of the policy are quoted in the petition. They disclose that the right to disability benefits was limited to the period before the insured reached the age of sixty (60) years, and thereafter the part of the premium attributable to this provision should cease to be collected. The face amount of the policy to be paid at death was to remain the same, and all other provisions with respect to cash value, dividends, etc., were not to be affected by the said waiver of premiums.

It is alleged that in the year 1933, "an addition was made to said policy", in so far as total and permanent disability before age sixty (60) was concerned, providing the income was to be increased to $15 per month for each $1,000 of insurance after the first five years of such continuous disability, and to $20 per $1,000 at the end of the second period of five years' continuous disability.

Petitioner further alleges that the insured "was taken ill on January 8, 1938. That on account of said illness and disease, as hereinafter set forth and described, he was confined to his bed and room, or in the sanitarium, until the latter part of October, 1938. That his illness was so acute and so serious that the members of his family, his friends, his doctors and the community at large had given up hope for his recovery, and did not know at what moment during that period of time he would die. That this condition was also known to the local agent of said company."

Petitioner also alleges as follows:

"Your petitioner shows that at the time he suffered this attack and at the time he became totally and permanently disabled, as hereinabove set forth, he had not attained the age of sixty years, and that no premiums due under said policy were in default, and that he had continuously paid the premiums provided by said policy, including the twenty one and 05/100 ($21.05) dollars for disability benefits, and had paid same for a period of twelve years. That

at the time of such total and permanent disability, that is, on January 8, 1938, the above described policy was in full force and effect.

"XIV. Petitioner further shows that after he was stricken as hereinabove alleged, on January 8, 1938, the quarterly premium due on said policy on February 18, 1938, was paid by his son, H. B. Womble, Jr., as was also the premium due on May 18, 1938 and the premium due August 18, 1938, and that petitioner paid the premiums due on November 18, 1938, February 18, 1939, and May 18, 1939, all of which payments were made from funds belonging to your petitioner. That while his son paid said premiums, as hereinabove described, he did not know that the policy hereinabove described contained the disability benefits as herein set forth. Petitioner shows that his wife, Mrs. Ida G. Womble, the beneficiary under said policy did not know of the disability benefits contained in said policy, and that his son and wife did not have access to said policy as same was in the safety deposit box of petitioner and under lock and key, and that the only knowledge which either his son or his wife had of the provisions of said policy was when your petitioner told them of same in February of 1939. That all premiums due on said policy from the date when it was issued have been paid, and no premium was in default on January 8, 1938, nor is any premium in default at this time.

"XV. Petitioner shows that from January 8, 1938 until the latter part of October, 1938, he was confined to his home or in the sanitarium and did not know whether he would live or die, and that due to his physical and mental condition brought about and caused by said disease he was unable to think about business and was incapacitated from giving any notice under said policy, and did not give notice of such disability until February, 1939, although the agent of said company at Gilbert, Louisiana, knew of such disability from its onset on January 8, 1938, and his condition was generally known.

"XVI. That under date of February 2, 1939, your petitioner notified the Mutual Life Insurance Company of New York of his disability, and requested forms to make proof of said disability.

"XVII. That on February 4, 1939, said company advised your petitioner that 'in accordance with the terms of the disability

clauses in your policies, no benefits are payable if you become disabled after attaining the age of sixty. We are nevertheless, submitting your letter to our home office, and upon receipt of their reply will be in a position to write you further.'

"XVIII. Your petitioner shows that he replied to said letter, stating that he was not claiming benefits for disability received after he attained the age of sixty, but for benefits resulting from an attack of coronary occlusion, which he suffered on January 8, 1938, and advised the company that his sixtieth birthday was June 9, 1938, and that as a result of such attack he was confined to his bed, critically ill, unable to attend to any business of any kind, until the late summer or early fall of 1938, and again requested that the company issue to him the necessary forms to make proof thereof.

"XIX. That under date of February 17th, said company notified petitioner that one of the provisions in his policy was that he should furnish to the company, at its home office, proof of such total and permanent disability before he had attained the age of sixty years, and that according to the home office records petitioner became sixty years of age on June 9, 1938, and since proof of total and permanent disability was not filed prior to his attaining the age of sixty, that under the terms of the contract claim for disability benefits would not be entertained. * * *

"XX. Petitioner shows that under date of March 6th, March 11th and April 1st, 1939, he again wrote the said Company, again advising them that he was not making claim for disability occurring from January 8, 1938 until late summer or fall of 1939, but for disability dating from January 8, 1938 and continuing to the present date, and that would remain during the balance of his life. That in the letter of April 1st, petitioner specially stated:

" 'In my letter of March 6, 1939 in which I state "As a result of this attack of coronary occlusion I was confined to my bed, critically ill, unable to attend to any business of any kind until the late summer or early fall, I wish to assure you that my condition was such during this time that I was unable to file claim for insurance disability or to attend to any other business. In view of the foregoing statement of fact, I sincerely hope that the Mutual Life Insurance Company will, reconsider this matter and allow the disability I feel that I am entitled to. Otherwise, I shall be forced to submit the matter to the court for decision." "

Petitioner further alleges that he was relieved from furnishing proofs because of defendant's refusal to entertain the claim, but in the alternative, if it should be held that notice of disability before reaching the age of sixty (60) years was necessary, then plaintiff's mental and physical condition was such that he could not give such notice and he was therefore excused from doing so. Further, that, "he bought and paid for the right to have waived" the premiums and the defendant agreed to refund any such as were paid after total and permanent disability, and that there was due to plaintiff the sum of $381.90 so paid; that the sum of $900 had accrued in monthly installments of $50 each at the rate of $10 per month upon each $1,000 of the face of the policy as income; that he is entitled to recover an additional $50 per month from February in 1939, the date he notified defendant of his disability, that is, for the months of March, April, May and June, 1939, or a total of $200, as well as $500 attorney's fees as penalties under Act No. 310 of the Legislature of Louisiana for the year 1910, or an aggregate total of all claims of $1,981.90.

Plaintiff prayed judgment accordingly, that is, he be decreed to have been totally and permanently disabled within the meaning of said policy from January 8, 1938, and "for further judgment maintaining the estoppel and/or waiver as set forth in this petition" and "that all rights be reserved to him to sue for any benefits due him after June 1, 1939."

In its petition for removal to this court, defendant admitted the issuance of the policy as alleged and that it contained the provision for disability benefits, and "for the waiver of premiums in the event the insured furnished proof before age of sixty (60) years that he was totally and permanently disabled"; that the annual premium was $240; that plaintiff had alleged that he had become disabled, within the meaning of the policy on January 8, 1938, but that he did not give notice thereof until February, 1939; and that he became sixty (60) years of age on June 9, 1938. It therefore alleged that the amount involved exceeded $3,000, because the policy provides that the disability provisions should

cease to operate after the insured attained the age of sixty (60) years and the premium paid therefor, amounting to $21.05 should be discontinued; and further, that the plaintiff's suit is an attempt not only to recover benefits, but of necessity to have the disability provisions reinstated, and applied because he was excused from giving notice and furnishing proof of disability for the reasons alleged, which has the effect of putting at issue his right to the entire benefits under the disability provisions of the policy, including the alleged waiver of premiums. Further, that the reserve which defendant would have to set up, if the disability provisions were found to be in force, would exceed the sum of $3,000; and, in the alternative, that the plaintiff has a life expectancy of thirteen years, which would cause the premiums alleged to have been waived to exceed the minimum jurisdiction of this court.

It thus appears from the face of plaintiff's own petition that there is a serious issue of both fact and law as to whether the provisions of the policy under which he seeks to recover were in effect when the suit was filed. The petition discloses that he had passed the age of sixty (60) years and more than a year had elapsed after he claims to have been totally and permanently disabled before he notified defendant. At the very threshold of the case and precedent to the question of whether he became totally and permanently disabled, plaintiff has, himself, presented an issue which involves the entirety of these provisions. If they no longer form part of the policy, then plaintiff's right to claim such benefits has been lost for the entire period of his life expectancy; whereas, if he is successful in maintaining his contention that he became totally and permanently disabled before age sixty (60) and that he is entitled to be excused for failure to give notice thereof, according to the terms of the policy, it has to that extent matured for the balance of his life, or at least so long as his total and permanent disability continues. It could not be revived in event of his restoration to health and a subsequent total and permanent disability, because he has passed the age of sixty (60) years.

It seems to me, therefore, that the situation is indistinguishable from those cases involving actions for the cancellation of policies or where they have matured by the death of the insured. See Mutual Benefit Health and Accident Association v. Fortenberry et al., 5 Cir., 98 F.2d 570, and authorities cited therein. This is, in effect, a suit for the reinstatement of the policy which, but for the equitable considerations alleged by plaintiff, at least in so far as the alternative demand is concerned, would have expired by its own limitation long before the suit was filed.

Benefit payments during plaintiff's life expectancy far exceed $3,000, as does the amount of premiums waived.

I am of the opinion that the motion to remand should be denied.