The PRUDENTIAL INSURANCE CO., Plaintiff,

v.

Allen F. THOMASON, Defendant.

Civ. No. 93–C–1147B.

United States District Court,
D. Utah,
Central Division.

Oct. 14, 1994.

Craig J. Jacobsen, Peter W. Billings, Salt Lake City, UT, for plaintiff.

David N. Mortensen, Provo, UT, for defendant.

## ORDER DENYING MOTION TO DISMISS

BENSON, District Judge.

### Introduction

Plaintiff in this action, The Prudential Insurance Company, has filed suit against defendant Allen F. Thomason to rescind defendant's disability insurance contract from the date of the contract's inception. Plaintiff invokes the jurisdiction of the court pursuant to both diversity and federal question jurisdiction, alleging that the amount in controversy is greater than $50,000 and that the insurance policy in issue is an ERISA plan.

Defendant has moved to dismiss the case for lack of subject matter jurisdiction, arguing 1) the case does not involve an amount in controversy greater than $50,000; and 2) the insurance policy is not an ERISA plan and, even if it is, defendant as an insurer cannot commence an action under ERISA.

Defendant's motion came on for hearing on July 18, 1994. Craig T. Jacobsen appeared

on behalf of plaintiff. David N. Mortensen appeared on behalf of defendant. Based on the submissions and arguments of the parties and all relevant law, and for good cause appearing, the Court hereby enters the following order denying defendant's motion to dismiss.

### Relevant Facts [1]

On December 22, 1991, defendant Thomason, a certified public accountant, submitted to Prudential an application for disability insurance under the American Institute of Certified Public Accountants ("AICPA") Long Term Disability Plan. In doing so, Thomason represented that he had never received treatment for or had any known indication of a nervous disorder. Thomason further stated that he had only seen one doctor in the previous five years, who had treated him for the flu. Prudential subsequently approved Thomason for coverage under the AICPA Long Term Disability Income Plan, effective January 1, 1992.

On January 10, 1993, Thomason filed a claim for disability benefits, asserting he was disabled as the result of severe depression.[2] His claim asked for the policy maximum $2,000 per week for 15 weeks, or $30,000. Upon receiving the claim, Prudential conducted an investigation in which it discovered that Thomason had indeed suffered previous similar nervous disorders dating since at least mid–1989, had been treated by at least two medical doctors, had taken Prozac for the condition, and had received counseling. Based on that information, Prudential denied Thomason's claim.

On July 1, 1993, AICPA informed Thomason by letter that his Long Term Disability Plan was cancelled effective June 1, 1993. Thomason did not pay premiums to Prudential after that time. Prudential then continued to deny the claim, offering instead to rescind the policy from the date of its inception and refund all premiums paid, plus inter-

---

1. This recitation of facts is based on the plaintiff's complaint and the submissions of the parties relevant to the instant motion. For purposes of this motion to dismiss, the Court assumes, as it must, that the allegations set forth in plaintiff's complaint are true. The facts discussed in this

section do not, of course, constitute findings by the Court on any issue.

2. Thomason filed this claim within the two-year contestability period of the policy.

est. Thomason, in response, contested Prudential's right to rescind and continued to pursue his claim.

On December 29, 1993, Prudential filed suit in this court seeking "1. An order that the Policy is rescinded from its inception date of January 1, 1992; [and] 2. An order that, based on the right of rescission of the Policy, Prudential is not obligated to pay Thomason's benefits claim." Prudential's complaint alleged that "[t]his court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that this dispute involves parties who are citizens of different states and involves a controversy exceeding $50,000, exclusive of interest and costs." The complaint further alleged that "[t]his court also has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1144(a) in that this dispute involves whether Thomason is entitled to benefits under an employee welfare benefit plan regulated by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*"

In his Motion to Dismiss, defendant contests these two bases of jurisdiction.[3]

### *Diversity Jurisdiction*

#### 1. *Defendant's Argument*

■ Defendant first argues that diversity jurisdiction is improper because the amount in controversy does not exceed $50,000. Defendant contends that the amount in controversy cannot be greater than the $30,000 in benefits he claims because Prudential, through AICPA, thereafter purported to terminate his coverage. Defendant maintains that the "majority position" measures the amount in controversy by "the disability benefits thus far accrued." *See* Reply Mem. at 3 (citing *Mutual Life Insurance Co. v. Moyle*, 116 F.2d 434, 435 (4th Cir.1940); *New York Life Insurance Co. v. Greenfield*, 154 F.2d 953 (5th Cir.1946); *Commercial Casualty Insurance Co. v. Fowles*, 154 F.2d 884 (9th Cir.1946)). Defendant concludes that because the case turns on the granting or denial of defendant's $30,000 claim, plaintiff has failed to establish the jurisdictional minimum necessary to sustain diversity jurisdiction.

#### 2. *Plaintiff's Argument*

Prudential responds that the amount in controversy is "the measure of the value of the object of the litigation," *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443–44, 53 L.Ed.2d 383 (1977), a proposition defendant does not dispute. In this case, plaintiff argues, the "object of the litigation" is defendant's disability insurance policy and plaintiff's maximum potential liability thereunder. Plaintiff has sought rescission of a policy with limits in excess of $50,000. Accordingly, plaintiff argues it has satisfied the jurisdictional amount.

Plaintiff cites in support of its position *Allstate Insurance Co. v. Hilbun*, 692 F.Supp. 698, 700, 701 (S.D.Miss.1988), in which an insurer seeking declaratory relief on a $100,000 policy limit satisfied the jurisdictional amount even though the insured submitted a claim of only $10,000. Plaintiff argues that, like the *Hilbun* case, "future disability claims" in this case could easily exceed the $50,000 minimum.

#### 3. *Discussion and Ruling*

■ When making a diversity jurisdiction determination, federal courts base the amount in controversy on the plaintiff's good faith claim in its complaint. To justify dismissal based on an insufficient jurisdictional amount, it must appear to the district court to a "legal certainty" that the claim is really for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

Defendant argued in his written memorandum that the only amount in controversy is the $30,000 disability benefits claim. At oral argument, however, defendant refused to concede that his claim was so limited. Rather, defendant admitted he may seek additional recovery from plaintiff under a claim of bad faith, which could include attorney's fees. Based on that representation to the Court, there is no "legal certainty" that the insur-

---

**3.** Defendant does not dispute that the two parties are citizens of different states.

ance dispute between the parties is limited to an amount in controversy less than $50,000.

The Court therefore looks to the jurisdictional amount alleged in plaintiff's complaint. In the instant case, plaintiff has asserted an amount in controversy greater than $50,000. At oral argument, plaintiff clarified that it based this amount on defendant's claims, present and pending. Because defendant has not foreclosed the possibility of future claims against plaintiff based on the parties' insurer-insured relationship, plaintiff's cases and reasoning therefrom are particularly pertinent, and defendant's distinguishing arguments are unfounded. *See, e.g., Allstate Insurance Co. v. Hilbun,* 692 F.Supp. 698, 700, 701 (S.D.Miss.1988) (object of litigation exceeded jurisdictional amount because of possibility of future claims under insurance policy, even though outstanding claim only $10,000). *But see* Defendant's Reply Mem. at 2–3 (arguing that Thomason could not add claims to his $30,000 benefits claim, thereby distinguishing *Hilbun*). The object of this litigation—defendant's insurance policy and present and potential claims thereunder—appears *prima facie* to meet or exceed the jurisdictional amount.

Accordingly, the Court finds a good faith basis for plaintiff's assertion of diversity jurisdiction. Defendant's motion to dismiss on that ground is therefore denied.

### Federal Question Jurisdiction

#### 1. Defendant's Argument

█ Defendant also argues that federal question jurisdiction is improper because AICPA is not Thomason's "employer," a requirement under the statute and relevant case law for an insurance package to qualify as an ERISA plan. Rather, defendant argues, AICPA is a professional association that sells insurance plans to independent CPA's or to CPA firms—employers—for coverage of their employees. Defendant cites cases in which courts have held that professional groups do not qualify as employers. *E.g., Credit Managers Assoc. v. Kennesaw Life & Accident Insurance Co.,* 809 F.2d 617 (9th Cir.1987) (Continental Organization of

Medical, Professional and Technical Employees not an "employer" under ERISA); *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir. 1982) (multiple employer trust held not to be ERISA plan).

Defendant further argues that Prudential cannot invoke ERISA because it is not authorized by the statute to do so. Only a "plan participant, beneficiary, fiduciary [or] the secretary of labor" may sue under ERISA. The courts, reading the clear language of the statute, have declined to extend a cause of action under ERISA to insurance companies, defendant argues. *See, e.g., Cripps v. Life Insurance Co. of North America,* 980 F.2d 1261 (9th Cir.1992). Accordingly, defendant concludes, Prudential cannot properly invoke the jurisdiction of the Court under ERISA, and federal question jurisdiction is therefore nonexistent.[4]

#### 2. Plaintiff's Argument

Plaintiff argues, on the other hand, that federal question jurisdiction is appropriate because the disability insurance plan at issue qualifies as an ERISA plan. Plaintiff submits that under *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 107, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983), a policy qualifies as an ERISA plan if 1) the policy itself is an ERISA plan; or 2) the policy is part of a multibenefit plan in which one or more components is an ERISA plan. Plaintiff maintains that the disability insurance plan meets the second definition. One of the components of the plan not at issue in this case—the Group Insurance Plan—qualifies as an ERISA plan. Therefore, plaintiff concludes, the disability plan also qualifies under *Shaw.*

Furthermore, plaintiff argues, AICPA is an "employer" as defined by ERISA. The statute defines "employer" broadly to include "any person acting directly as an employer, *or indirectly in the interest of an employer,* in relation to an employee benefit plan." Under this definition, plaintiff reasons, AICPA qualifies as an "employer."

Prudential offers as support for this position a case from the Northern District of

---

4. At oral argument, defendant submitted to the Court a copy of an additional case to support its

arguments, *McCaslin v. Blue Cross & Blue Shield,* 779 F.Supp. 1312 (N.D.Ala.1991).

California in which the district court determined that the AICPA, the same party through which Prudential acts in the instant case, qualified as an employer under ERISA. *See Fisher v. Prudential Insurance Co. of America,* 842 F.Supp. 397 (N.D.Cal.1993). The *Fisher* court also concluded that under the second *Shaw* definition outlined above, the insurance policy at issue, though not itself an ERISA policy, was part of a multibenefit plan that included an ERISA plan, thereby qualifying the policy at issue.

Prudential asks the Court to follow the *Fisher* holding in the instant case.

### 3. Discussion and Ruling

Plaintiff's argument fundamentally misapprehends the holding in *Shaw.* In that case, the Supreme Court addressed whether ERISA preempted state antidiscrimination statutes relating to employee benefit plans. *See Shaw,* 463 U.S. at 88, 103 S.Ct. at 2896. The Court held that ERISA did preempt New York's Human Rights Law insofar as the state law prohibited practices that were lawful under federal law. *Id.* at 109, 103 S.Ct. at 2906. The Court further held that ERISA did not preempt New York's Disability Benefits Law; the Court held, however, that the state could not enforce its law through regulation of ERISA-covered benefit plans. *Id.* at 109, 103 S.Ct. at 2906.

On this last point, the *Shaw* Court specifically addressed state regulation of benefit plans under § 4(b)(3) of ERISA, 29 U.S.C. § 1003(b)(3). *See Shaw,* 463 U.S. at 106–08, 103 S.Ct. at 2904–06. That subsection exempts from ERISA coverage employee benefit plans "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." The Court determined those insurance plans maintained by the defendant employers which complied with the Disability Benefits Law, but which also contained additional benefits, did not qualify for this exemption. *Id.* at 107, 103 S.Ct. at 2905.

The *Shaw* Court reasoned that any other rule would subject one portion of a multibenefit plan to state regulation and the remainder to federal regulation, an unworkable administrative scheme not contemplated by Congress. *Id.* at 108, 103 S.Ct. at 2905–06. The Court allowed that states could require employers to maintain separately administered disability plans that specifically complied with state law, or could alternatively require that employers include such disability terms in ERISA packages. *Id.* at 108, 103 S.Ct. at 2905–06. If the plan was separately administered and contained only those terms required by the state law, the state could take advantage of the exemption in § 4(b)(3) to directly enforce its regulations. *Id.* On the other hand, if the plan was not separately administered and the disability benefits in the ERISA package fell short of the state law requirements, the state could compel the employer to maintain a separately administered plan that did comply. *Id.*

From this holding, plaintiff has advanced the proposition that "an insurance policy can be an ERISA plan (and thereby trigger federal subject matter jurisdiction)" if "the policy [is] part of a multibenefit plan in which one or more of the components is an ERISA plan." Plaintiff's Mem. in Opp. at 8. That conclusion misunderstands or otherwise misapplies the holding of *Shaw.*[5] The plan in *Shaw* was, without dispute, an ERISA plan. The only question was whether the disability portion of the plan qualified, by itself, for the exemption. The plan in the instant case, in contrast, is without dispute a non-ERISA plan. Adoption of plaintiff's reasoning would twist *Shaw* to mean that a plan admittedly not covered by ERISA somehow sneaks under the ERISA umbrella by virtue of other plans administered by the same entity. That reasoning does not follow from *Shaw* and is not an accurate statement of the law.

To reach such a conclusion would be to turn every cause of action under a disability insurance contract into an ERISA claim if the insurer arranged its business affairs to have the non-ERISA contract included in a

---

5. The conclusion is based, of course, on *Fisher v. Prudential Insurance Co. of America,* 842 F.Supp. 397 (N.D.Cal.1993), which relied, in turn, primarily on the reasoning of *du Mortier v. Massachusetts General Life Insurance Co.,* 805 F.Supp. 816 (C.D.Cal.1992).

large, singly-administered set of plans that included an ERISA plan. Such intent cannot fairly be attributed to Congress nor to the ERISA scheme, nor has plaintiff satisfied the Court from the language of the statute that Congress so intended. *Shaw* certainly does not compel such a conclusion.

An insurance plan is either an ERISA plan based on its own terms and circumstances, or it is not. *Shaw* recognized that fact. The existence of a separate insurance plan, regardless of who administers it, has no bearing on the determination.

Analysis of the instant case, limited to its own facts, confirms the finding that ERISA does not cover the disability plan at issue. The AICPA Long Term Disability Plan is not an employee benefit plan as defined by ERISA. Under *Peckham v. Gem State Mutual,* 964 F.2d 1043, 1049 (10th Cir.1992), the plan must be "part of an employment relationship." The AICPA plan subscribed to by defendant unequivocally is not. Specifically, there is no employer or employee organization involvement in this case. Even construing the term "employer" in its broadest sense under the act, the AICPA was not acting indirectly in the interest of defendant's employer in relation to this plan. The facts admitted by the parties indicate defendant bought the disability benefits plan from AICPA on his own through the mail. There is nothing in *Shaw* and nothing in ERISA itself to suggest that in the absence of employer involvement ERISA will take away an individual's right to have state contract laws apply to his garden variety insurance contract dispute.

6. *Fisher* was a suit by a beneficiary against the insurer, and is thus distinguishable in that regard from the instant case.

7. At oral argument, plaintiff submitted that it might qualify as a "fiduciary" under the act and would thus have standing to bring an ERISA claim. Plaintiff submitted no further evidence to support this assertion. Even if plaintiff could qualify as a fiduciary of an employee benefit plan under the act, however, the Court has found the plan at issue is not an employee benefit plan and therefore not the proper subject of ERISA's civil enforcement provisions.

8. Section 1144(a) of ERISA, cited by plaintiff in its complaint as the basis for federal jurisdiction, does not compel a contrary conclusion. That

Plaintiff has also failed to raise a valid claim under ERISA's civil enforcement provisions. *Fisher v. Prudential Insurance Co.* at least involved a plaintiff who had properly invoked the civil enforcement mechanism of the act.[6] *See* 29 U.S.C. § 1132. Plaintiff in the instant case, in contrast, is not a proper ERISA plaintiff under the clear language of the statute and the relevant case law. *See id.; see also Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983) (ERISA "does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action.... A suit for similar relief by some other party does not 'arise under' " ERISA.); *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1984) (ERISA's complex remedial scheme "provide[s] strong evidence that Congress did *not* intend to authorize other remedies").[7] Accordingly, Prudential has no grounds on which to claim federal question jurisdiction.[8]

In sum, then, plaintiff has failed to properly invoke ERISA as a basis for federal question jurisdiction. The plan at issue is not an ERISA employee benefit plan, and plaintiff may not maintain a civil enforcement action under the statute. Plaintiff's case law is inapposite or, to the extent applicable, unpersuasive and flawed in its reasoning. Furthermore, nothing in the Supreme Court's *Shaw* opinion justifies plaintiff's position. There is therefore no federal question jurisdiction in this Court.

subsection merely states that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a)." Plaintiff has failed to show what, if any, state law it intended to supersede. In reality, the issue of state law preemption raised by § 1144(a) does not come into play at all in this case, further distancing this case from the holding in *Shaw,* not to mention the facts in *Fisher.* Plaintiff is simply attempting to use ERISA as a basis for federal jurisdiction. As shown, the allegations of the complaint do not justify any such jurisdiction.

*Conclusion*

In sum, the Court has diversity jurisdiction in this case based on plaintiff's good faith claim of an amount in controversy greater than $50,000. For this reason, defendant's motion to dismiss for lack of subject matter jurisdiction is denied. The Court does not, however, have federal question jurisdiction, as ERISA does not cover the insurance plan at issue and plaintiff may not maintain an action under the civil enforcement provisions of the statute.

Motion to dismiss DENIED. IT IS SO ORDERED.